QUESTIONS: 1. Is a judicial nominating commission required or authorized to go outside the circuit to find qualified nominees when it certifies three candidates as nominees for a judicial vacancy pursuant to Art. V, s. 11, State Const., and two of the nominees would not accept the commission if appointed and the commission has found there are no other qualified candidates in the circuit? 2. If the answer to question 1 is negative, would the certification of only one candidate in fact violate the provision of Art. V, s. 11, State Const., requiring the commission to submit "not fewer than three persons"?
SUMMARY: Under Art. V, s. 11, State Const., it is the duty of a judicial nominating commission to submit to the Governor the names of three nominees who are qualified for, and willing to accept an appointment to, the judicial post for which the nominations are made. Attorneys residing outside the circuit in which the vacancy exists who are willing to change their residence to that circuit, if appointed, may apply for the position and may be nominated by the judicial nominating commission. Under Art. V, s. 11, State Const., the Governor is required to fill a vacancy in judicial office by appointing "one of not fewer than three persons nominated by the appropriate judicial nominating commission." A "nomination" is by definition "the formal presentation of the name of a candidate for the office to be filled." (Emphasis supplied.) Sturgis, Standard Code of Parliamentary Procedure, Ch. 11, p. 71. And, ordinarily, the consent of the person to his or her candidacy is obtained before his or her name is placed in nomination. A judicial nominating commission has the constitutional duty to supply the Governor with the names of at least three nominees or candidates for appointment to the judicial office in which there is a vacancy. While the Constitution does not expressly so provide, it seems clear that no person should be nominated by the commission unless he or she has, at least, consented to becoming a candidate for appointment to that judicial office and would accept the commission if appointed. As stated in In re Advisory Opinion to Governor, 276 So.2d 25, 29 (Fla. 1973), which was concerned with this same constitutional provision, In construing a constitutional provision, the words should be given reasonable meaning according to the subject matter, but in the framework of contemporary societal needs and structure. Such light may be gained from historical precedent, from present facts, or from common sense. State ex rel. West v. Gray, 74 So.2d 114, p. 116 (Fla. 1954). And as a matter of plain ordinary common sense, a judicial nominating commission should not submit the names of nominees to the Governor without first making sure that such persons are not only qualified to perform the duties of the office but are also willing to accept the commission if appointed by the Governor. In no other way can the Governor be assured of having a choice of at least three persons who are qualified for and willing to accept the office, as contemplated by the Constitution. See In re Advisory Opinion, supra, 276 So.2d at 29, pointing out that the Constitution "confers upon the Governor the express power to make the final and ultimate selection by appointment." The advisory opinion referred to above also relied on the wellsettled rule of statutory and constitutional construction that intent may be ascertained by examining the purpose sought to be accomplished or the evils to be prevented or remedied, and pointed out that: The purpose of the judicial nominating commission is to take the judiciary out of the field of political patronage and provide a method of checking the qualifications of persons seeking the office of judge. When the commission has completed its investigation and reached a conclusion, the persons meeting the qualifications are nominated. In this respect the commissioners act in an advisory capacity to aid the Governor in the conscientious exercise of this executive appointive power. (Emphasis supplied.) [(See) 276 So.2d at 30.] It was said also that the judicial nominating commissions were created "to screen applicants for judicial appointments within their respective jurisdictions and to nominate the three best qualified persons to the Governor for his appointment." [See] 276 So.2d at 29. These statements indicate that the commission should nominate only applicants for the position; however, as noted above, in any event a judicial nominating commission may not properly submit as nominees the names of persons who, although qualified, have not indicated their willingness to accept the post if appointed. There is nothing in the Constitution or statute which either expressly or by necessary implication prohibits the acceptance of applications from attorneys who reside outside the circuit. While a circuit judge must be an elector of the state and must reside within the territorial jurisdiction of the court, Art. V, s. 8, State Const., there is no constitutional requirement that he or she must have resided in the circuit for any particular length of time prior to the appointment or election. And, as noted in a letter to Judge Robert H. Matthews dated July 13, 1972, this constitutional provision and applicable statutory provisions . . . have been administratively interpreted as establishing a residential qualification for holding the office but not a condition precedent to qualifying to become a candidate for the office. This interpretation is in accord with the decisions of the Florida Supreme Court with respect to the requirement in the oath of office that a candidate is qualified for the office which he seeks. See Davis ex rel. Taylor v. Crawford, 116 So. 41 (Fla. 1928); State ex rel. Knott v. Haskell, 72 So. 651 (Fla. 1916); State ex rel. Fair v. Adams, 139 So.2d 879 (Fla. 1962); Advisory Opinion to the Governor, 192 So.2d 757 (Fla. 1966).